COURT OF APPEALS
DECISION
DATED AND FILED

May 22, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2023AP932
                2023AP933**

Cir. Ct. Nos.  2019CF909
               2020CF123

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ROBERT FRANCIS BEECHER,

   DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Sheboygan County:  KENT R. HOFFMANN, Judge.  *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In these consolidated cases, Robert Beecher appeals from judgments of conviction for armed robbery and burglary, entered on his guilty pleas, and from orders denying his motions for postconviction relief. He claims the circuit court erred by denying his motions to withdraw his guilty pleas, which motions were based on his contention he did not understand the court could order his armed robbery sentence to run consecutively to his burglary sentence. He alternatively asks us to order modification of his sentence—to make his armed robbery sentence concurrent, instead of consecutive, to his burglary sentence—claiming such modification is warranted because the consecutive sentence was too "harsh" and thus amounted to an erroneous exercise of discretion by the court. For the following reasons, we affirm.

### Background

¶2 The State charged Beecher with armed robbery with threat of force, as a repeater, in connection with an incident in which he demanded and took money from a gas station while brandishing a butcher knife and with burglary from a room, as a repeater, in connection with an incident in which he entered a residential care living facility and stole two wallets of caregivers. As part of a plea agreement, the State agreed to recommend specific initial confinement and extended supervision time on each case and that the sentences run concurrent to each other.

¶3 The circuit court confirmed at the plea hearing Beecher's understanding of the possible penalties for each case with the repeater enhancer—thirteen years and six months of initial confinement and five years of extended supervision on the burglary charge and thirty-one years of initial confinement and fifteen years of extended supervision on the armed robbery charge. The court

2

further confirmed Beecher's understanding that it "could, if it saw it as appropriate, impose the maximum penalties in spite of any agreements or recommendations." Following these and other aspects of the plea colloquy, the court accepted Beecher's pleas.

¶4 In sentencing Beecher, the circuit court explained why it had determined "a significant prison sentence is appropriate," focusing on the need to protect the public, deter Beecher and others from future such crimes, and punish Beecher for his "very concerning conduct" that "calls out for punishment," especially in light of his lengthy criminal record. The court discussed how the present crimes are the "type of conduct the community needs protection from" in that they are "a violation of sanctity of security and of personal peace," have "such an effect on a … victim … and [are] so dangerous to everyone when [they are] occurring." The court reviewed Beecher's criminal record, which included twelve prior offenses, and it considered as aggravating the fact he committed the present offenses while on extended supervision.

¶5 The circuit court found it "very concerning" that in relation to the armed robbery offense, Beecher brandished a knife while demanding money from a gas station clerk who was working by herself and later bragged to another inmate that "it was a thrill." Beecher's conduct, the court stated, was "very serious" and "could have escalated into something even worse." As to the burglary offense, the court found it particularly disturbing that Beecher victimized caregivers working at "a home that cares for vulnerable people." The court emphasized the effect of the burglary on the victims who, based upon the statement of the victims' representative at sentencing, "no longer bring their belongings to work" or "trust … family members who come into the facility."

3

¶6     On the burglary count, the circuit court sentenced Beecher to six years of initial confinement and four years of extended supervision, and on the armed robbery count, it sentenced him to ten years of initial confinement and five years of extended supervision, consecutive to the burglary sentence, for a total of sixteen years of initial confinement and nine years of extended supervision. The court found that this was "the minimum amount of time—sentence needed" to meet its sentencing objectives of protection of the community, deterrence, and punishment and expressed that Beecher had "had so many opportunities in the community, these crimes are so serious, that I just think anything less than what I have sentenced you to here today would not meet the[se] objectives." The court made Beecher eligible for the substance abuse program after serving ten years of initial confinement.

¶7     Beecher filed postconviction motions seeking (1) to withdraw his pleas on the basis that he did not understand the circuit court could order the sentence of one case to run consecutive to the other case, or in the alternative, (2) modification of his armed robbery sentence so that it would run concurrent to his burglary sentence, because the court erroneously exercised its discretion in ordering it to run consecutively as the resulting sentence was too harsh. At the evidentiary hearing on his motions, Beecher testified he did not understand that the court could order his sentences to run consecutively and that had he known, he would not have pled. He claimed he was "told" that his sentences would run concurrently, but did not identify who told him this. The court found that Beecher had seventeen prior convictions. Beecher admitted that he had been sentenced to consecutive sentences in connection with a 2013 conviction, and he agreed that he "understood that to mean that [he] would serve those cases one right after each other."

4

¶8  Specifically noting that Beecher had previously received a consecutive sentence, the circuit court denied his motions to withdraw his pleas, finding his testimony untruthful that he did not understand that the court could order his sentence in one case to run consecutive to his sentence in the other case. The court further determined that ordering the armed robbery sentence to be served consecutively to the burglary sentence was not unduly harsh, noting that the sentence on the armed robbery charge was "not close to the maximum" that it could have imposed. The court pointed out that in its discretion it had determined that the sentence it imposed was "the minimum amount of time needed" to meet its objectives of community protection, deterrence, and punishment. The court stated: "I don't think that the sentence in any way shocks the public sentiment and violates the judgment of a reasonable person regarding what is right and proper under the circumstances of these cases, particularly when you couple that with Mr. Beecher's prior record."

¶9  Beecher appeals.

## *Discussion*

¶10  Beecher first asserts he must be allowed to withdraw his pleas because at the time he entered them, he "did not understand"/"was unaware" the circuit court could order his sentences to run consecutively, and thus he did not knowingly enter his pleas. We quickly reject this assertion, because the court specifically found that he *did* know it could order one of his sentences to run consecutively to the other.

¶11  "We review a circuit court's decision to deny a plea withdrawal motion under an erroneous exercise of discretion standard." *State v. Schmidt*, 2021 WI 65, ¶12, 397 Wis. 2d 758, 960 N.W.2d 888 (citation omitted). A

5

defendant seeking to withdraw his plea after sentencing must establish "by clear and convincing evidence that failure to withdraw the guilty or no contest plea will result in a manifest injustice." *State v. Taylor*, 2013 WI 34, ¶48, 347 Wis. 2d 30, 829 N.W.2d 482. "[O]ne way for a defendant to meet this burden is by demonstrating he or she did not knowingly, intelligently, and voluntarily enter the plea." *State v. Finley*, 2015 WI App 79, ¶16, 365 Wis. 2d 275, 872 N.W.2d 344 (citation omitted). "We review a determination regarding the validity of a plea using a mixed standard, whereby we accept the circuit court's findings of historical fact unless they are clearly erroneous, but independently determine whether those facts establish that the plea was entered knowingly, intelligently, and voluntarily." *Id.*

¶12  Beecher loses on his first issue because following his testimony at the postconviction hearing, the circuit court found, contrary to Beecher's claim, that he did know at the time of his plea that he could be sentenced to consecutive sentences. As indicated above, "we accept the circuit court's findings of historical fact unless they are clearly erroneous." *Id.* An appellant bears the burden on appeal to show us how the circuit court erred, *see* *Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381, and here, Beecher fails to demonstrate how the circuit court erred with this determinative factual finding. The court observed Beecher's testimony at the hearing and concluded he was being untruthful. We give great deference to the credibility determinations of a factfinder who has the opportunity to observe the testifying witness. *See* *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 ("When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony."). Beecher develops no argument for why we should reject

the court's credibility determination. Furthermore, the court's finding that Beecher was being untruthful when he testified he did not understand when he pled that the court could sentence him to consecutive sentences on the two cases was supported by the evidence presented at the postconviction hearing. Beecher testified, and the court found, that he had previously been convicted of seventeen criminal offenses. As our supreme court has stated:

> [T]he law in Wisconsin presumes that one who has been convicted of a crime is less likely to be a truthful witness than one who has not been convicted. In addition, the number of prior convictions is also held to be relevant evidence on the issue of credibility because the more often one has been convicted, the less truthful he is presumed to be.

*Nicholas v. State*, 49 Wis. 2d 683, 688, 183 N.W.2d 11 (1971). Seventeen convictions would provide any factfinder a strong reason to conclude the testifying witness could not readily be believed, especially where, as here, the testimony was inherently self-serving. Furthermore, Beecher admitted he had previously been sentenced to consecutive sentences, so his assertion that he did not understand the potential for consecutive sentences obviously rang hollow with the circuit court, as it stated.

¶13 Beecher alternatively asserts the circuit court erroneously exercised its discretion in sentencing him because its decision to order the armed robbery sentence consecutive, instead of concurrent, to the burglary sentence was too "harsh." An unduly harsh sentence is one that is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Cummings*, 2014 WI 88, ¶72, 357 Wis. 2d 1, 850 N.W.2d 915. Where a sentence is "well within the limits of the maximum

sentence," it is presumptively not unduly harsh. ***State v. Grindemann***, 2002 WI App 106, ¶32, 255 Wis. 2d 632, 648 N.W.2d 507 (citation omitted).

¶14 To begin, Beecher's argument is woefully undeveloped, so we do not consider it. *See **Clean Wis., Inc. v. PSC***, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."). His "argument" consists of little more than his opinion, supported by reference to a letter from the director of food services at the Sheboygan County Detention Center indicating he is an excellent and promising employee; essentially he attempts to argue as if we are the circuit court deciding on his sentence in the first instance, and he fails to develop a legal argument as to why the circuit court's order making the armed robbery sentence consecutive was unduly harsh. Moreover, Beecher was facing total potential confinement of forty-four years and six months followed by twenty years of extended supervision. The court imposed a total of sixteen years of initial confinement and nine years of extended supervision, well below the maximum allowed—"well within the limits of the maximum sentence." *See **Grindemann***, 255 Wis. 2d 632, ¶32 (citation omitted). Furthermore, the court thoroughly explained why the sentence it imposed was "the minimum amount of time—sentence needed" to meet its sentencing objectives of protection of the community, deterrence, and punishment, considering the serious nature of the crimes on which Beecher was being sentenced and his lengthy criminal record. We further note that in its reasonable exercise of its sentencing discretion, the court made Beecher eligible for the substance abuse program after ten years, affording him an opportunity for early release from confinement. *See* WIS. STAT.

§ 302.05(1), (3)(c) (2021-22);[1] ***State v. Lynch***, 2006 WI App 231, ¶4, 297 Wis. 2d 51, 724 N.W.2d 656.  We conclude the court did not erroneously exercise its discretion in ordering the sentence on the armed robbery case to run consecutively to the sentence on the burglary case.

*By the Court.*—Judgments and orders of the circuit court are affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.